UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANTHONY MESSINA, on behalf of himself and all others similarly situated, | Case No. 22-cv-10706 |
| Plaintiff, | F. Kay Behm<br>United States District Judge |
| v. | |
| S&A SOLUTIONS, INC., | |
| Defendant.<br>_____ / | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF No. 8)

### I.   INTRODUCTION

This matter is before the court on Defendant S&A Solutions' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). (ECF No. 8). Plaintiff Anthony Messina filed his first amended complaint on May 3, 2022, arguing that Defendant failed to provide him with a copy of his background report and a description of his rights in writing before taking adverse action against him in violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681b(b)(3)(A)(i) and (ii). (ECF No. 7). On May 4, 2022, Defendant filed the present motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), arguing that Plaintiff lacks standing to bring his claims. (ECF No. 8). This case was initially before District Judge Judith E. Levy, but was reassigned to the

undersigned on February 6, 2023.  The court held a hearing on this motion on May 17, 2023.  (*See* ECF No. 14).  For the reasons stated below, the court finds Plaintiff has standing and **DENIES** Defendant's motion.

II.     **FACTUAL BACKGROUND**

The key facts of this case are not in dispute.  Defendant is a recruiting company specializing in the recruitment of skilled trade, light industrial, technical, and professional employees.  (ECF No. 7, PageID.55).  Plaintiff applied to be a driver for Defendant in June of 2021, and Defendant expressed interest in hiring him.  *Id*.  As part of his onboarding process, Plaintiff signed a form titled "S&A Solutions Consent Form To Obtain Conviction Criminal History File Search Internet Criminal History Access Tool (ICHAT), Orsus and Shield Screening Release and Investigative Consumer Reports for Employment Purposes" ("authorization form").  (*See* ECF No. 8, PageID.87).  The authorization form specifically sought Plaintiff's consent for Defendant to obtain his consumer reports, including "employment records, work experience and references" and "[r]ecords concerning any driving, criminal history, credit history, civil record, workers' compensation (post-offer only) drug testing."  *Id*.  The authorization form also asked Plaintiff whether he had "ever been charged with, arraigned for, pled [sic] guilty to or convicted [sic] of criminal charges" and provided check boxes for "Yes"

and "No." *Id*. The authorization form did not ask employees to further elaborate or explain any criminal charges. *Id*. Plaintiff checked the box marked "Yes" and supplemented his answer by hand-writing "In 2003" in the margin. *Id*.

On June 21, 2021, Defendant made an offer of employment to Plaintiff. (ECF No. 11, PageID.104). On June 23, 2021, Defendant obtained a copy of Plaintiff's background report, which shows that Plaintiff had, in fact, pleaded guilty to numerous offenses in 2003 and received a prison sentence of two to 15 years. (*See* ECF No. 8, PageID.91-92). The background report also lists a number of offenses under the "judicial segment" of the form, but does not clearly state whether any new charges were ever brought against him. *Id*. Plaintiff contests the validity of this report and argues that it overstates and mischaracterizes his criminal history. (ECF No. 7, PageID.58). Plaintiff's employment application was subsequently terminated by Defendant because they "felt [Plaintiff] had misrepresented the extent of his criminal past and decided not to hire him on the basis of the misrepresentation." (ECF No. 8, PageID.77). Plaintiff argues that Defendant never gave him a copy of his background report and, therefore, he never had an opportunity to review it or explain its contents. (ECF No. 7, PageID.61).

## III. STANDARD OF REVIEW

A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(1) alleges the court does not have subject matter jurisdiction over the claims as presented. Fed. R. Civ. P. 12(b)(1). Allegations that a plaintiff lacks standing can be brought as a motion to dismiss for lack of subject matter jurisdiction. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) ("We review de novo a district court's dismissal of a case for lack of standing – lack of subject matter jurisdiction – under Fed. R. Civ. P. 12(b)(1)."). Motions brought under Rule 12(b)(1) fall into two categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack is a "challenge to the sufficiency of the pleading itself" whereas a factual attack "is a challenge to the factual existence of subject matter jurisdiction." *Id.* In this case, Defendant brings a facial attack and, therefore, the court must "accept[] the material allegations in the complaint as true and construe[] them in the light most favorable to the nonmoving party." *Id.*

## IV. ANALYSIS

The undisputed facts of this case establish that Plaintiff was offered a job by Defendant, Plaintiff signed a release form authorizing Defendant to obtain his background report, and Plaintiff was terminated prior to his start date based on

information contained in that report.  (*See* ECF No. 7, PageID.55-58).  It is also undisputed that Defendant failed to give Plaintiff a copy of his background report prior to taking adverse action, in violation of 15 U.S.C. § 1681b(b)(3)(A).  (*Id.*, PageID.59).  Likewise, the only remaining question is whether Defendant's alleged violation of the FCRA rises to the level of an injury in fact sufficient to confer standing.

    A.    <u>Relevant Standing Doctrine</u>

Article III of the Constitution limits the jurisdiction of federal courts to hear actual "cases" and "controversies."  U.S. Const. Art. III § 2 cl. 1.  For there to be a case or controversy under Article III, a plaintiff must have a "personal stake" in the case, otherwise known as standing.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  To establish standing, a plaintiff bears the burden to show: "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Here, the parties' arguments center on the injury in fact requirement.  An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)

(citing *Lujan*, 504 U.S. at 560). To be concrete, an injury must "actually exist," but may be tangible or intangible. *Id.* The most obvious concrete injuries are tangible, such as physical or monetary harms. *TransUnion*, 141 S. Ct. at 2204. However, intangible harms can also be concrete, particularly when they have a "close relationship to a harm that has traditionally been recognized as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341 (citations omitted).

Alleged intangible harms often involve the violation of a statutory right or requirement. *TransUnion, LLC*, 141 S. Ct. at 2205. The difference between statutory standing and Article III standing can be distilled as follows: "an individual's right to sue under a statute (statutory standing) is triggered when the statute is violated, but his right to have the claim heard by a federal court (Article III standing) is not triggered until the violation results in concrete harm." *Merck v. Walmart, Inc.*, No. 2:20-CV-2908, 2023 WL 4848510, at *4 (S.D. Ohio July 28, 2023). Where a statute protects only a procedural interest, a party does not have Article III standing "unless and until the statutory violation actually injures the plaintiff." *Id.* In other words, even if a statute gives an individual the right to sue for a violation of its terms, a court must still determine whether that individual was actually harmed by the alleged statutory violation. *TransUnion, LLC*, 141 S.

6

Ct. at 2205 ("under Article III, an injury in law is not an injury in fact.  Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.").

The Sixth Circuit has not directly addressed what constitutes a concrete injury in fact when dealing with an alleged violation of the FCRA's pre-adverse action requirement.  However, the Sixth Circuit has recently addressed statutory standing in the context of a different statute, the Telephone Consumer Protection Act (TCPA).  *Dickson v. Direct Energy, LP*, 69 F.4th 338 (6th Cir. 2023).[1]  In *Dickson*, the Sixth Circuit reaffirmed the relevant test for statutory standing: "to determine whether an intangible harm…rises to the level of a concrete injury, courts may look to (1) history and tradition, and (2) Congress's judgment in enacting the law at issue."  *Id.* at 343 (citing *TransUnion, LLC*, 141 S.Ct. at 2204-05; *Spokeo*, 578 U.S. at 340).

Outside of the Sixth Circuit, numerous other courts have reviewed cases involving alleged violations of the FCRA's pre-adverse action requirements and have reached contradicting results.  *See Azeez v. Lifespan Corp.*, 635 F. Supp. 3d

---

[1] *Dickson* was released several months after Defendant's motion was fully briefed.  Likewise, the court asked both parties to submit supplemental briefing addressing whether *Dickson* had any impact on their arguments or the outcome of the motion to dismiss.  (*See* ECF No. 17).  Both parties did so on July 10, 2023.  (*See* ECF Nos. 18, 19).

75, 83 ("there has been a Circuit split on how plaintiffs can demonstrate standing in pre-adverse-action notice claims under § 1681b(b)(3)(A)").

On one side, the Eighth and Ninth Circuits have held that a bare procedural violation of 15 U.S.C. § 1681b(b)(3)(A) is insufficient to confer standing. *See Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1176 (9th Cir. 2018) ("although Dutta made a plausible showing of State Farm's procedural violation of FCRA, he failed to establish facts showing he suffered actual harm or a material risk of harm")*; Schumacher v. S.C. Data Center, Inc.*, 33 F.4th 504, 512 (8th Cir. 2022) ("Schumacher's adverse action claim is not redressable under the plain language of the statute."). On the other side, the Third and Seventh Circuits have held that a mere violation of the pre-adverse action requirement *is* sufficient to confer standing. *See Long v. Se Pennsylvania Transportation Auth.*, 903 F.3d 312, 319 (3d Cir. 2018) ("§ 1681b(b)(3) confers on the individual a right to receive, before adverse action is taken, a copy of his or her consumer report (regardless of its accuracy) and a notice of his or her rights"); *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 696 (7th Cir. 2018) ("…Allied deprived her of the chance to review [the report] and present her side of the story. That is the very reason why the FCRA

obligates employers to produce a copy of the report before taking adverse action").[2]

Defendant argues this court should follow the Eighth and Ninth Circuits' reasoning and find Plaintiff lacks standing to bring his case. Defendant's argument relies heavily on a recent case, *Gray v. Nachurs Alpine Sols., LLC*, No. 3:21-CV-125, 2023 WL 3004433 (N.D. Ohio Apr. 19, 2023), which similarly involved a plaintiff who was fired based on information contained in his background report. The employment application in question asked the plaintiff "whether he had been convicted of a crime in the last 10 years." *Id.* at *1. The plaintiff responded "No," but his background report later revealed at least one misdemeanor conviction. *Id.* at *2. The court held that the plaintiff had failed to allege a concrete injury sufficient to confer Article III standing because, "even if

---

[2] Defendant stresses that the cases relied on by Plaintiff, including *Long* and *Robertson*, were decided prior to the Supreme Court's decision in *TransUnion* and, therefore, are no longer applicable. (ECF No. 12, PageID.130). In *TransUnion*, the plaintiffs were individuals whose internal credit files had been incorrectly marked as a potential match to a list of "specially designated nationals who threaten America's national security." *TransUnion*, 141 S. Ct. at 2201. The Court held that only the plaintiffs whose internal credit files had been sent to a third party had suffered an injury sufficient to confer standing. *Id.* at 2212. In the same vein, the Court held that the plaintiffs whose information had *not* been disseminated did not have standing, because they had "identified no downstream consequences from failing to receive the required information." *Id.*, at 2214. However, both *Long* and *Robertson* include allegations of "downstream consequences" as a result of the defendants' violations; namely, that the plaintiffs were deprived of the ability to explain their background report, which may have impacted the defendants' hiring decision. Likewise, the court finds that the cases decided prior to *TransUnion* dealing directly with § 1681b(b)(3)(A), such as *Long* and *Robertson*, still provide a persuasive analysis, even in light of *TransUnion.*

9

Gray had received the disclosure prior to NAS withdrawing its offer, it would not negate the fact that the background check showed accurate information which rendered Gray ineligible for the position." *Id.* at *4.

In contrast, Plaintiff argues that this court should adopt the reasoning in cases following the Third and Seventh Circuits' approach. For example, Plaintiff argues *Helwig v. Concentrix Corp.*, No. 1:20CV920, 2021 WL 1165719 (N.D. Ohio Mar. 26, 2021) supports a finding of standing. In *Helwig*, the plaintiff similarly applied for a position with the defendant company, consented to a background check, and was terminated after his "background [did] not meet company requirements." *Id.* at *1. The court held that "Section 1681b(b)(3)(A) protects consumers' concrete interests in receiving their background reports before an employer takes adverse action" and, therefore, the plaintiff had sufficiently demonstrated that the defendant "harmed his concrete rights by violating this section." *Id.* at *5. The court also held that "what [plaintiff] would have done with the report, or what he may do with it, is an issue for the merits and not relevant to Plaintiff's standing rights." *Id.* at *4.

To determine whether the court should follow the Eighth and Ninth Circuits' approach or the Third and Seventh Circuits', the court will apply the Supreme Court's test from *Spokeo* and *TransUnion*, as reaffirmed by the Sixth

10

Circuit in *Dickson*. *Dickson*, 69 F.4th at 343 ("To determine whether an intangible harm…rises to the level of a concrete injury, courts may look to (1) history and tradition and (2) Congress's judgment in enacting the law at issue") (citations omitted).

B.  History and Tradition

The court will first consider whether Plaintiff has alleged an injury that "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *See id.*; *Spokeo*, 578 U.S. at 341 ("It is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."). This test does not require a perfect match, and focuses instead on whether the analogous cause of action protects "essentially the same interests" as the traditional cause of action. *Long*, 903 F.3d 312, 324 (3d. Cir. 2018) (citing *Sussino v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017)). In other words, the court must look for a close relationship "*in kind, not degree.*" *Dickson*, 69 F.4th at 344 (citing *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462-63 (7th Cir. 2020)). The harm does not need to be sufficient to state an independent claim at common law. *TransUnion*, 141 S. Ct. at 2204 ("*Spokeo* does not require an exact duplicate in American history and tradition.").

In this case, Plaintiff argues there is a "nexus between common-law privacy rights and the FCRA's protections against interference with a prospective employee's ability to regulate dissemination of their personal background information." (ECF No. 18, PageID.174). In making this argument, Plaintiff relies on *Long*, where the Third Circuit found that the FCRA's pre-adverse action requirement was sufficiently analogous to similar common law privacy rights. *Long*, 903 F.3d at 324. Historically, an individual's right to privacy could be invaded by: "(a) unreasonable intrusion upon the seclusion of another,… (b) appropriation of the other's name or likeness, … (c) unreasonable publicity given to the other's private life, … or (d) publicity that unreasonably places the other in a false light before the public…" *Id.* (citing Restatement (Second) of Torts § 652A(2)(a)-(d) (1977)). The Supreme Court has previously held there is no common law analogue for a claim involving "the mere existence of inaccurate information, absent dissemination." *TransUnion*, 141 S. Ct. at 2210. However, the latter three types of privacy torts mentioned above broadly reflect a concern for an individual's ability to control the dissemination or use of their personal information. *Long*, 903 F.3d at 324.

The injury alleged in this case, Defendant's reliance on Plaintiff's consumer report as a basis for his termination without affording him an opportunity to

12

review or respond, closely aligns with this concern. *See id*. As such, the court agrees that the relevant statute, 15 U.S.C. § 1681b(b)(3)(A)(i), protects "essentially the same interests" as traditional privacy torts. *Id.* (citing *Sussino*, 862 F.3d at 351). Plaintiff's alleged harm is sufficiently related to the kind of harm protected at common law, and the first prong of the relevant test is met.

    C.    Judgment of Congress

The Supreme Court has specifically observed that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," and its judgment is "'instructive and important' in determining whether an intangible harm rises to an injury in fact." *Dickson*, 69 F.4th at 349 (citing *Spokeo*, 578 U.S. at 341) (adding that Congress is empowered to identify concrete harms that are inadequate in law and recognize them, by statute, as legally cognizable injuries.). Likewise, the court must determine whether Plaintiff's alleged harm "aligns with the conduct Congress sought to regulate through federal law" in enacting the underlying statutory scheme, the FCRA. *Id.*

The FCRA was broadly "crafted to protect consumers from the transmission of inaccurate information about them in consumer reports." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017) ("*Spokeo II*"). Consumer reports include "any written, oral, or other communication of any information…bearing on a

13

consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics..." to be used "for the purpose of serving as a factor in establishing the consumer's eligibility for...employment purposes..." 15 U.S.C. § 1681a(1). Criminal background checks fall under this category. 15 U.S.C. § 1681a(d)(1); *Long*, 903 F.3d at 318. The relevant Congressional reports indicate that the pre-adverse action requirement was added as a specific response to concerns that "the ability of employers to obtain consumer reports on current and prospective employees may unreasonably harm employees if there are errors in their reports." S. Rep. No. 104-185, at 35 (1995); *see also Dutta*, 895 F.3d at 1169. This legislative history is supported by the plain text of the pre-adverse action requirement, codified in 15 U.S.C. § 1681b(b)(3)(A), which requires:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates – (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

A "denial of employment" is considered an adverse action. *Id*. The FCRA also includes a statutory remedy if "any person [] willfully fails to comply with any requirement imposed under this subchapter..." 15 U.S.C. § 1681n(a). Under this subsection, an individual will be liable to the affected consumer for "any actual

14

damages sustained by the consumer as a result of the failure or damages not less than $100 and not more than $1,000…" as well as "such amount of punitive damages as the court may allow" and "…the costs of the action together with reasonable attorney's fees as determined by the court." *Id.*

The text of the statute and the relevant reports suggest that Congress passed § 1681b(b)(3)(A) with the specific goal of curbing the dissemination of false information by "giv[ing] a job applicant a procedural protection that is akin to pre-depravation due process: notice and the opportunity to contest erroneous information in a credit report before the prospective employer takes an adverse action based on such information." *Dutta*, 895 F.3d at 1174-75. This goal applies whether the information included in the consumer report is accurate or inaccurate. *See Long*, 903 F.3d at 319 ("it would not make sense for § 1681b(b)(3) to apply only to inaccurate information, because the consumer cannot know whether his report is accurate unless it is disclosed to him."). However, the purpose of the statute is especially pertinent when a violation includes a report with information that a plaintiff alleges is "materially inaccurate" or "misleading." (*See* ECF No. 11, PageID.106).

In this case, Defendant claims they chose not to hire Plaintiff because of the alleged "misrepresentation" on his job application form, where his statement "In

15

2003" did not match up with the information in his background report. (*See* ECF No. 8, PageID.77) ("S&A felt that Mr. Messina had misrepresented the extent of his criminal past and decided not to hire him on the basis of the misrepresentation.").[3] This fact is particularly important because the outcome of Defendant's hiring decision could have been different if he were allowed to explain the difference between his statement "In 2003" and the information contained in his background report. *See Azeez*, 635 F. Supp. 3d at 86 ("Certainly there was a great deal of context that Mr. Azeez might have provided in this case."); *Robertson*, 902 F.3d at 697 ("information that seems damning at first glance might not be so mad in context. A person with a spotted record might convince an employer to revisit its decision if she can explain what happened.").

This fact is also important because it highlights a distinction between this case and many of the cases cited by Defendant. In *Gray* and *Schumacher*, as well as others, it was found that the defendant would not have hired the plaintiff *even*

---

[3] At the hearing, Defendant attempted to change their argument and, for the first time, stated that their decision not to hire Plaintiff was based solely on his criminal background and the nature of his charges. However, a party may not raise an argument for the first time at oral argument. *Lafata v. Dearborn Heights Sch. Dist. No. 7*, No. 13-CV-10755, 2013 WL 6500068, at *8 (E.D. Mich. Dec. 11, 2013) ("Generally, courts will not consider theories or arguments raised for the first time at oral argument."); *Probst v. Central Ohio Youth Ctr.*, 511 F. Supp. 2d 862, 871 (S.D. Ohio 2007) ("It is well established that a moving party may not raise an issue for the first time in its reply brief or at oral argument."). As such, the court will rely on the arguments made in their motion to dismiss and subsequent pleadings.

*if* they had been given an opportunity to dispute the information in their background report. *See Gray*, 2023 WL 3004433 at *4 ("even if Gray had received the disclosure prior to NAS withdrawing its offer, it would not negate the fact that the background check showed accurate information which rendered Gray ineligible for the position."); *Schumacher*, 33 F.4th at 507 (Plaintiff noted on her employment form that she "was once arrested in 1996 at age 17 and then found Not guilty" but her background report revealed felony convictions for murder and armed robbery."). Here, Plaintiff did not outright lie on his employment form, and Defendant has not pointed to a policy that would have automatically rendered him ineligible for employment. Additionally, Defendant's employee handbook directly states that criminal convictions do not automatically disqualify an individual from employment.[4] (ECF No. 7, PageID.56).

Plaintiff argues that his background report "inaccurately depicts [his] criminal history," and Defendant "took adverse action against him without furnishing a copy of the report," depriving him of the opportunity to dispute the

---

[4] The full text of this cited section states: "You must notify S&A of any felony, misdemeanor, or other convictions, which occur while S&A [sic]. Communication of this information employs you [sic], <u>will not automatically disqualify you from employment.</u> This is to ensure the offense does not substantially relate to your work assignment. Falsification or misrepresentation on your application will result in an immediate termination." (ECF No. 7, PageID.56).

contested information. *Id.*, PageID.59. Especially where, as here, an individual was not automatically disqualified from employment and directly contests the accuracy of the information included in the background report, the injury suffered is exactly the type sought to be prevented by Congress. *See also Long*, 903 F.3d at 324 ("taking an adverse employment action without providing the required consumer report is 'the very harm that Congress sought to prevent, arising from prototypical conduct proscribed' by the FCRA"). Likewise, Plaintiff also satisfies the second prong of the relevant test.

## V. CONCLUSION

Because Plaintiff has satisfied both prongs of the test prescribed by *Spokeo, TransUnion,* and *Dickson*, the court is satisfied that Plaintiff has standing to bring his claims. Defendant's failure to provide Plaintiff with a copy of his background report prior to taking an adverse action deprived him of an opportunity to advocate for himself and explain the allegedly "misleading" information. This alleged injury bears a close relationship to the kind of injury protected by common law privacy torts, and is the exact type of situation Congress intended to prevent in passing this section of the FCRA. *See, e.g., Long*, 903 F.3d at 319 ("This right permits individuals to know beforehand when their consumer reports might be used against them, and creates the possibility for the consumer to respond to

inaccurate or negative information…"). Under the specific facts of this case, the court adopts the Third and Seventh Circuit's approach.

Viewing the facts in the light most favorable to Plaintiff, he has pleaded enough at this stage to demonstrate standing under Article III. Defendant's Motion to Dismiss (ECF No. 8) is **DENIED** and Plaintiff's case may proceed to the discovery phase**.**

**SO ORDERED**.

Date: September 30, 2023           s/ F. Kay Behm
                                                     F. Kay Behm
                                                     United States District Judge